IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MAURICE BACKUS, | § | |
| | § | |
| Defendant Below, | § | No. 170, 2020 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1611008050 (N) |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 6, 2020
Decided: January 8, 2021

Before **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

## O R D E R

(1)    The appellant, Maurice Backus, has appealed the Superior Court's denial of his first motion for postconviction relief under Superior Court Criminal Rule 61. After careful consideration of the parties' briefs and the record, we affirm the Superior Court's judgment.

(2)    After a bench trial on stipulated facts, the Superior Court convicted Backus of drug dealing and aggravated possession of cocaine. The court merged the offenses for sentencing and sentenced Backus to imprisonment for twenty-five

years, suspended after five years for eighteen months of probation. This Court affirmed on direct appeal.[1]

(3) The stipulated facts for trial were as follows:

1. On or about November 12, 2016, Cpl. Jesus Caez of the Wilmington Police Department conducted a traffic stop of a Dodge Dakota operated by the Defendant, Maurice Backus, in New Castle County, Delaware.

2. Cpl. Caez conducted the stop because he directly observed the defendant talking on a cellular telephone while operating the vehicle.

3. When Cpl. Caez approached the vehicle, the defendant was still speaking on the phone. Cpl. Caez asked the defendant to stop, and the defendant put the cellular phone in the storage area under the front dashboard.

4. During the traffic stop, the defendant began reaching between the driver's seat and the center console. When Cpl. Caez asked the defendant about it, the defendant said he was placing his cell phone there, even though the cell phone was already placed in the front storage area.

5. Cpl. Caez removed the defendant from the vehicle, and eventually found a bag of suspected cocaine in the defendant's pocket.

6. Later, the substance was tested by NMS Labs. It came back positive for cocaine at a weight of 124 grams.

7. In a subsequent recorded interview, after being read his *Miranda* warnings, the defendant agreed to speak with Cpl. Caez.

8. During that interview, the defendant admitted that he was delivering the cocaine for someone else.

(4) Before trial, Backus's counsel had filed a motion to suppress, arguing that Caez unconstitutionally expanded the scope of the traffic stop when he asked

---

[1] *Backus v. State*, 2019 WL 327963 (Del. Jan. 23, 2019).

Backus to step out of the vehicle so that he could frisk him. Backus's arguments on appeal relate to the testimony elicited at the suppression hearing and the preliminary hearing and the arguments that Backus contends counsel should have made concerning that testimony; we therefore have carefully reviewed the record of those proceedings and further summarize the testimony presented.

(5) Caez and a passenger in Backus's vehicle testified at the hearing on the motion to suppress. The testimony reflected that Caez pulled Backus over after seeing him talking on a cell phone while driving. Backus remained on the phone after Caez approached the truck, and Caez told him to hang up the phone. Backus complied, placing the phone on the center console, toward the front of the vehicle. Caez told Backus that he had pulled him over for the cell phone violation and asked for his driver's license. Backus handed Caez his license but then "made a sudden, furtive movement with his left hand sliding across to his right waist area towards the center console" and turned his body in such a way that it obscured Caez's view.[2] Caez asked Backus what he was doing, and Backus replied that he was setting down his cell phone.[3] Caez testified that he was aware that the cell phone was already resting in the front area of the center console,[4] and so he became concerned that

---

[2] *State v. Backus*, Cr. ID No. N1611008050, Tr. of Motion to Suppress Hearing, at 7 (Del. Super. Ct. Aug. 14, 2017).

[3] Id.

[4] The passenger testified that the cell phone had fallen to the floor and that the officer told Backus to pick it up and then place his hands on the steering wheel. *Id.* at 32-33.

Backus was actually reaching for a weapon.[5] Caez therefore asked Backus to place his hands on the steering wheel and called for backup.

(6) Caez testified at the suppression hearing that, while waiting for backup to arrive, he asked Backus where his registration and insurance were located and then allowed the passenger to retrieve them from the glove box.[6] Backus contends that this testimony was inconsistent with Caez's testimony at the preliminary hearing, where Caez testified that Backus gave him the registration and insurance card.[7] Backus asserts that he told the officer that he had turned toward the center console in order to retrieve his insurance and registration and that, while they were waiting for backup to arrive, the officer allowed Backus himself to retrieve the documents from the center console. In support of his postconviction motion, Backus submitted an affidavit from the passenger stating that Backus retrieved the documents from the center console and handed them to the officer and that the passenger "never handed Backus or the officer any of Backus' information out of the glove box."

(7) When backup arrived, Caez asked Backus to step out of the vehicle and to place his hands on the truck. After Backus alighted from the truck, Caez began

---

[5] *Id.* at 7-9; 19-20; 24-25.
[6] *Id.* at 21-25.
[7] *State v. Backus*, Cr. ID No. N1611008050, Tr. of Preliminary Hearing, at 18 (Del. Super. Ct. Dec. 6, 2016).

4

to frisk Backus. As Caez began the frisk, he saw a black bag hanging out of Backus's jacket pocket. Protruding from the black bag, Caez could see a clear bag that contained a substance that Caez recognized from his training and experience to be cocaine, and he seized the bag and placed Backus under arrest.

(8) Backus's counsel conceded that Caez had reasonable, articulable suspicion to stop the vehicle based on the cell phone violation. But she contended that the officer unconstitutionally prolonged the stop beyond what was necessary in order to issue a traffic citation and that the cocaine was discovered as a result of that unconstitutional detention. The Superior Court denied the motion to suppress. The court found that Backus's movements in the vehicle led the officer to believe that the defendant might have had a weapon in the car, that he intended to conduct a pat-down for officer safety reasons, and that "he observed, in plain view, hanging out of the jacket the defendant was wearing[,] what appeared to be a bag of cocaine, which he then seized."[8] This Court affirmed on direct appeal, during which different counsel represented Backus. This Court held that Caez did not illegally order Backus from his vehicle and that the Superior Court committed no reversible error in determining that the cocaine was admissible under the plain-view doctrine.[9]

---

[8] *Backus*, Tr. of Motion to Suppress Hearing, at 57-58.

[9] *Backus*, 2019 WL 327963, at *2 ("[W]e defer to the Superior Court's finding that Caez saw the cocaine in plain view. . . . The three other requirements for admission of evidence under the plain-view doctrine were also satisfied. First, Caez was lawfully in a position to observe the cocaine. As mentioned, Caez lawfully stopped Backus's truck and ordered Backus to exit the truck. Once

5

(9) Backus then filed a *pro se* motion and amended motion for postconviction relief, in which he asserted claims of ineffective assistance of both trial and appellate counsel. The Superior Court granted Backus's motion for appointment of postconviction counsel, and the Office of Conflict Counsel appointed counsel to represent him. Postconviction counsel filed a motion to withdraw, indicating that he had not identified any grounds for postconviction relief that he could ethically advocate. After further briefing from Backus and the State, the Superior Court denied the motion for postconviction relief and granted postconviction counsel's motion to withdraw. Backus has appealed to this Court.

(10) This Court reviews the Superior Court's denial of a motion for postconviction relief for abuse of discretion.[10] We review legal or constitutional questions, including claims of ineffective assistance of counsel, *de novo*.[11] The Court considers the procedural requirements of Rule 61 before addressing any substantive issues.[12] As the Superior Court correctly determined, Backus's claims of ineffective assistance of counsel are not procedurally barred.[13]

---

Backus did so, Caez could and did see the cocaine. Second, the cocaine's evidentiary value was immediately apparent. Third, Caez had a lawful right of physical access.").

[10] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).

[11] Id.

[12] *Bradley v. State*, 135 A.3d 748, 756-57 (Del. 2016).

[13] *See Green v. State*, 238 A.3d 160, 175 (Del. 2020) ("[I]neffective-assistance claims are not subject to Rule 61(i)(3)'s bar because they cannot be asserted in the proceedings leading to the judgement of conviction under the Superior Court's rules and this Court's precedent.").

(11) In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (i) his defense counsel's representation fell below an objective standard of reasonableness, and (ii) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[14] Although not insurmountable, there is a strong presumption that counsel's representation was professionally reasonable.[15] A defendant must also make concrete allegations of actual prejudice to substantiate a claim of ineffective assistance of counsel.[16] The same *Strickland* framework applies when evaluating a claim that appellate counsel provided ineffective assistance.[17]

(12) Backus claims that his trial counsel provided ineffective assistance because she did not effectively use inconsistencies in the testimony provided at the suppression hearing and at the preliminary hearing, which Backus believes undermine the Superior Court's determination that Caez acted reasonably out of a concern for officer safety. As the Superior Court determined, Backus has not demonstrated that there is a reasonable probability that further exploration of this issue would have resulted in suppression of the evidence. In ruling on the suppression motion, the court found that the officer reasonably feared for his safety

---

[14] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[15] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).

[16] *Bradley v. State*, 135 A.3d 748, 760 (Del. 2016).

[17] *Neal v. State*, 80 A.3d 935, 946 (Del. 2013).

as the result of Backus's movement in the vehicle. Counsel questioned the witnesses extensively regarding Backus's movement and the officer's observations about that movement. Although Backus disagrees with the court's factual findings regarding the movement and the officer's inferences about the reasons for the movement, we see no reasonable probability that the court's conclusions would have been different had counsel engaged in further questioning on this subject. Moreover, the officer-safety issue goes to the questions of whether the officer constitutionally extended the traffic stop or began a pat down. But as we held on direct appeal, "once a police officer conducts an otherwise valid traffic stop, the Constitution permits that officer to order the driver to exit the vehicle."[18] In this case, the officer testified that the cocaine was in plain view once Backus exited the vehicle and the officer could see his right-side pocket; thus, the issues of whether the stop was impermissibly extended or whether a pat down was warranted are not dispositive.

(13) Backus also argues that his trial counsel provided ineffective assistance by focusing the suppression hearing on the officer-safety issue and the prolongment of the traffic stop, rather than on the issue of whether the cocaine was in plain view. This Court has already held that the requirements for admission of the cocaine under

---

[18] *Backus*, 2019 WL 327963, at *2.

the plain-view doctrine were satisfied in this case.[19] Although Backus contends that his trial counsel should have argued that the cocaine was not in plain view because it was inside a nontransparent plastic bag, he has not offered any new, extrinsic evidence that contradicts the officer's testimony that he could see the cocaine in plain view after Backus exited the car. We therefore conclude that Backus has not demonstrated that there was a reasonable probability that the court would have suppressed the evidence if trial counsel had elicited additional testimony regarding the plain-view issue. For similar reasons, we reject Backus's claim that appellate counsel was ineffective for failing to raise the plain-view issue on direct appeal.

(14) Backus also asserts that his trial counsel was ineffective for conceding that there was probable cause for the traffic stop, because the officer never issued Backus a traffic citation. Caez testified that he directly observed Backus using a cell phone while driving, a violation of Delaware's motor-vehicle laws for which Caez could stop the vehicle to issue a traffic citation. The Superior Court determined, and we agree, that trial counsel was not ineffective for conceding that the stop was supported by probable cause, because there was no basis for challenging probable

---

[19] *See id.* (deferring to the Superior Court's factual finding that Caez observed the cocaine in plain view in the absence of contradictory extrinsic evidence and holding that the requirements for admission of evidence under the plain-view doctrine were satisfied).

9

cause. To the extent that Backus is arguing that counsel should have argued that the stop was pretextual, we conclude that he was not prejudiced by her failure to do so.[20]

(15) Backus argues that his appellate counsel was ineffective because he never met with nor communicated with Backus and because he failed to file a motion for reargument of this Court's order affirming Backus's conviction. Backus contends that, had his appellate counsel done those things, he would have raised the plain-view and inconsistent-testimony issues on appeal. Relying on *United States v. Cronic*,[21] Backus asserts that we should presume that he was prejudiced because, by failing to raise those issues, counsel entirely failed to subject the prosecution's case to meaningful adversarial testing.[22] We disagree. Appellate counsel did not entirely fail to subject the case to meaningful adversarial testing; rather, appellate counsel filed a merits brief that argued that the police violated Backus's federal and state constitutional rights by conducting an investigative detention that exceeded the permissible bounds of the traffic stop.[23] Under the circumstances of this case,

_____

[20] *See Juliano v. State*, 2020 WL 6815414, at *9 (Del. Nov. 12, 2020) ("[T]he temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws is not an unreasonable seizure . . ., even if a reasonable officer would not have stopped the motorist absent another law enforcement objective.").

[21] 466 U.S. 648 (1984).

[22] *See id.* at 659 (holding that *Strickland* prejudice will be presumed in certain circumstances, including "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing").

[23] *See Caldwell v. State*, 780 A.2d 1037, 1042 (Del. 2001) ("It has long been clear that the duration and execution of a traffic stop, like any investigative stop, must be reasonably related to the initial purpose of the stop. Thus, under the Fourth Amendment to the United States Constitution, any

*Strickland*, and not *Cronic*, applies. Backus therefore must demonstrate that he was prejudiced by appellate counsel's alleged ineffectiveness. For the reasons discussed above with respect to Backus's claims that his trial counsel was ineffective, we conclude that Backus was not prejudiced by appellate counsel's failure to raise the inconsistent-testimony and plain-view issues, either in the initial briefing on direct appeal or in a motion for reargument.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

detention of a vehicle or its occupants beyond that required to complete the purpose of the traffic stop must be supported by independent facts sufficient to justify the additional intrusion.").